FARMERS AND MECHANICS BANK *v.* PHILLIP B. KNELLER ET AL.
(14071)

O'Connell, Foti and Spear, Js.

Argued September 12, 1995—decision released January 16, 1996

*Richard B. Polivy*, with whom, on the brief, were *Cheryl Gabes DeGregorio* and *Mei-Wa Cheng*, for the appellant (defendant Edward J. Przybysz).

*Theodore V. Raczka*, with whom, on the brief, were *Nancy Conaway-Raczka* and *John F. Shaw*, for the appellee (plaintiff).

FOTI, J. This is an appeal taken by the defendant Edward J. Przybysz from a judgment of strict foreclosure, the granting of a motion for deficiency judgment and the attendant valuation of the subject real property. The defendant alleges that the trial court improperly (1) retracted its order to reset the law day, (2) denied the defendant's motion to dismiss the plaintiff's motion

for deficiency judgment, and (3) admitted the testimony of the plaintiff's appraiser. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of this appeal. On or about December 29, 1989, the defendants Phillip B. Kneller and Przybysz executed a promissory note in the amount of $205,000 in favor of the plaintiff. The note was secured by an open-end mortgage on premises at 222-224 Pearl Street, Middletown. Kneller and Przybysz defaulted on the note, and, as a result, the plaintiff instituted this foreclosure action.[1]

On October 5, 1992, the trial court rendered judgment of strict foreclosure in the plaintiff's favor and set a law day of October 28, 1992. On October 27, 1992, the defendant filed motions to open the judgment,[2] to enjoin the passing of the October 28, 1992 law day and to present evidence. The October 28, 1992, law day passed without the trial court's hearing or acting on the defendant's motions and, without the defendant's redeeming his interest in the subject property. Thereafter, on November 2, 1992, the plaintiff filed a motion for deficiency judgment dated October 30, 1992, pursuant to General Statutes § 49-14 (a).[3]

---

[1] The plaintiff named as defendants Phillip B. Kneller, Edward J. Przybysz, John and Jane Doe of the first floor front of 222-224 Pearl Street, John and Jane Doe of the first floor rear of 222-224 Pearl Street, John and Jane Doe of the second floor front of 222-224 Pearl Street and John and Jane Doe of the second floor rear of 222-224 Pearl Street. Prior to the institution of this foreclosure, the defendant Kneller filed for protection under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court District of Connecticut at Hartford and, pursuant to such filing, received a discharge in bankruptcy. On September 16, 1992, prior to the date of judgment in this suit, the action was withdrawn as to the John and Jane Does. In this appeal, the sole remaining defendant is Przybysz. We refer to him in this opinion as the defendant.

[2] The defendant's motion is mistitled as a motion to reopen. The judgment, not having been previously opened, could not be reopened. The motion was one to open the judgment. See General Statutes § 49-15.

[3] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage

On November 9, 1992, the trial court, *Higgins, J.,* conducted a hearing regarding the defendant's motions. The plaintiff objected to both the defendant's motion to open the judgment and his motion to enjoin the law day. The trial court denied the defendant's motion to open the judgment of strict foreclosure and his motion to enjoin the October 28, 1992 law date.[4] Judge Higgins then reset the law day to December 9, 1992, by ordering, "December 9th, owners of the equity, subsequent days, junior encumbrancers, inverse order of priority." The defendant did not redeem on or before the December 9, 1992 law day.

On January 11, 1993, the plaintiff filed a certificate of foreclosure in the Middletown land records certifying that title to the subject property had vested in the plaintiff on December 10, 1992. On that same day, the plaintiff attempted to file a motion for deficiency judgment dated January 6, 1993. The clerk's office date stamped the motion January 11, 1993, but later crossed out the date stamp and returned the motion to the plaintiff for the lack of an order and certification sheet. The plaintiff subsequently refiled the motion with the required order and certification sheet. The clerk's office date stamped the plaintiff's motion for deficiency judgment as being filed on January 14, 1993.

On or about March 5, 1993, the defendant filed a motion to dismiss,[5] a motion to impose fees and costs

foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

[4] At the hearing, the defendant's motion to present evidence was marked "off" and never rescheduled for argument.

[5] The defendant's motion to dismiss was accompanied by a memorandum of law.

and an objection to the January 14, 1993 motion for deficiency judgment alleging untimely filing, pursuant to the thirty day limitation stated in § 49-14. On March 10, 1993, the plaintiff sought to reclaim its motion for deficiency judgment dated October 30, 1992, for the short calendar.

The plaintiff filed a memorandum of law in opposition to the defendant's motion to dismiss on March 22, 1993. On that same day, the defendant filed an objection to the plaintiff's reclaim of its motion for deficiency judgment dated October 30, 1992.

In a memorandum of decision on objections to motions for deficiency judgment dated July 9, 1993, the trial court, *Higgins, J.,* overruled the defendant's objection to the plaintiff's motion to reclaim its motion for deficiency judgment.[6] The trial court's memorandum of decision held that it had "erred in hearing the defendant's motion to reopen judgment on November 9, 1992, and in resetting the law day for December 9, 1992." The trial court also concluded that "it had no authority to reset the law day to December 9, 1992, the operative law day for the purposes of this foreclosure action was October 28, 1992." The trial court concluded that the plaintiff's October 30, 1992 motion for deficiency judgment was timely filed and could be reclaimed. On October 29, 1993, the plaintiff filed an amended certificate of foreclosure on the Middletown land records to correct the date on which title vested in the plaintiff to correspond to Judge Higgins' decision.

Subsequently, on May 10, 1994, the trial court, *R. O'Connell, J.,* conducted a full evidentiary hearing on

---

[6] The defendant appealed the trial court's denial of his objection to the plaintiff's motion for deficiency judgment. *Farmers & Mechanics Bank* v. *Kneller,* Appellate Court Docket No. 12704. The plaintiff moved to dismiss this appeal as improper because it was not taken from a final judgment. The plaintiff's motion was granted and the appeal was dismissed by this court on October 20, 1993.

the plaintiff's October 30, 1992 motion for deficiency judgment. The trial court issued a written memorandum of decision, dated September 16, 1994, granting a deficiency judgment in favor of the plaintiff. The trial court determined that title had vested in the plaintiff on October 29, 1992, that the value of the subject property on that date was $180,000, and that the mortgage debt on that date was $235,990.13. The trial court then rendered a deficiency judgment against the defendant in the amount of $60,990.13, plus interest from October 29, 1993. Further, the trial court awarded the plaintiff additional attorney's fees of $5000. The defendant appealed from that judgment.

I

The defendant first claims that the trial court improperly retracted its order to reset the law day. The defendant argues that the trial court extended and reset the law day in accordance with the consent and agreement of the parties.[7]

---

[7] The defendant supports this argument by pointing to the following portion of the dialogue which occurred at the November 9, 1992 hearing between the court and counsel:

"The Court: The motion to reopen is denied. The motion to enjoin is denied.

"[Defense Counsel]: The other motion can be marked off, Your Honor. That would be towards the hearing in damages for a deficiency.

"The Court: Motion to present evidence?

"[Defense Counsel]: Yes, Your Honor, that can be marked off.

"The Court: You've got to reset all the law days?

"[Plaintiff's Counsel]: No, Your Honor, the law days have passed, I believe. This motion was filed in a rather untimely manner.

"The Court: The problem here is in the filing of the motions. They automatically delay the law days, doesn't it?

"[Plaintiff's Counsel]: You're right, Your Honor.

"The Court: Is that correct?

"[Plaintiff's Counsel]: I believe you're right, Your Honor.

"The Court: We have to reset the law days now.

"[Plaintiff's Counsel]: Please, Your Honor.

"The Court: You'll have me back and forth with the Supreme Court on that a couple of times.

"[Plaintiff's Counsel]: You would be the last judge of the Superior Court I would want that to happen to, Your Honor.

The defendant maintains that the transcript from the November 9, 1992 hearing clearly demonstrates that both parties knew that the original law day had passed and mutually agreed to extend and reset the law day. The defendant stresses that despite the trial court's denial of his motion to open the judgment and to enjoin the law day, that court left all aspects of the judgment of strict foreclosure intact, and merely extended and reset the law day in accordance with the express consent of the parties.

The defendant acknowledges that because the trial court did not disturb any aspect of its judgment of strict foreclosure, any question of error is limited to the extension and resetting of the law day. Moreover, the defendant concedes that if General Statutes § 49-15[8] is strictly construed, an opening of the judgment under these circumstances would be deemed improper. The defendant correctly argues, however, that the courts of this state have long held that the otherwise erroneous opening of a judgment of strict foreclosure, after the time fixed by statute, is an error that may be waived. See *Ferguson* v. *Sabo*, 115 Conn. 619, 622–23, 162 A. 844 (1932). Consequently, the defendant reasons,

"The Court: It already happened once so I'm used to it. We'll reset the law days for December 9th, owners of the equity, subsequent days, junior encumbrancers, inverse order of priority.

"[Defense Counsel]: Thank you, Your Honor.

"[Plaintiff's Counsel]: And reaffirm all the other orders?

"The Court: The motion—The only portion of the judgment the court has modified is the reset of the law days made necessary by the defendant's motion and the ruling on the defendant's motion."

[8] General Statutes § 49-15 provides: "Opening of judgments of foreclosure. Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering the same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, notwithstanding the limitation imposed by section 52-212a, upon such terms as to costs as the court deems reasonable; *but no such judgment shall be opened after the title has become absolute in any encumbrancer.*" (Emphasis added.)

the consent of the parties to the resetting of the law day, constituted a waiver by the parties of any error the court may have committed in resetting the law day, thereby giving legal effect to the trial court's action.

The defendant insists that the plaintiff's acceptance of the trial court's order, as well as the plaintiff's subsequent conduct, are convincing proof that the parties acquiesced in the resetting of the law day, thereby effecting a waiver by the parties of the provisions of § 49-15. The specific behavior exhibited by the plaintiff on which the defendant relies to substantiate his claim that the plaintiff waived the provisions of § 49-15, is the plaintiff's lack of subsequent objection to the resetting of the law day, the plaintiff's filing of the certificate of foreclosure, which certified the vesting of title as of December 10, 1992, and the plaintiff's second filing of a motion for deficiency judgment on January 14, 1993. The defendant argues that all of these facts demonstrate that the plaintiff placed no reliance on the October 28, 1992 law day, accepted the December 9, 1992 law day as the only true law day for purposes of this suit and conducted itself accordingly, fully embracing the court's action in resetting the law day and waiving the provisions of § 49-15. We find the defendant's reliance on the theory of consent and waiver by the parties to the provisions of § 49-15 unpersuasive and without basis in Connecticut law.

The dispositive controversy in this case is whether the defendant's motion to open precipitated an automatic stay that tolled the running of the law days. It is a well settled principle of law in this state "that the mere filing of a motion to reopen the judgment does not result in an automatic stay." *Brooklyn Savings Bank* v. *Frimberger*, 29 Conn. App. 628, 631, 617 A.2d 462 (1992); *Farmers & Mechanics Savings Bank* v. *Sullivan*, 216 Conn. 341, 349, 579 A.2d 1054 (1990); see Practice Book § 4046.

Our Supreme Court examined the effect of timely filing a motion to open after a judgment of strict foreclosure has been rendered in *Farmers & Mechanics Savings Bank* v. *Sullivan*, supra, 216 Conn. 341. The court noted that the trial court in that case had relied on a legal principle from a leading Connecticut treatise, D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.01C, which stated, "[a] critical factor to be recognized in connection with a motion to reopen a judgment of strict foreclosure is that the motion must be heard, and not merely filed, prior to the vesting of title." The Supreme Court qualified this legal proposition by adding that "[t]his observation would be correct if limited to a motion made after the expiration of the time to appeal from the initial foreclosure judgment, because no automatic stay would result from its filing." *Farmers & Mechanics Savings Bank* v. *Sullivan*, supra, 349.

In *Sullivan*, the Supreme Court held that a motion to open had been filed within the time for appeal from the judgment of strict foreclosure, thereby effecting an automatic stay and nullifying the original law day. In this case, however, the facts are dissimilar from those in *Sullivan*. Here, the trial court rendered judgment of strict foreclosure on October 5, 1992. Pursuant to Practice Book § 4009,[9] the defendant had twenty days

[9] Practice Book § 4009 provides in pertinent part: "The party appealing shall, within twenty days, except where a different period is provided by statute, from the issuance of notice of the rendition of the judgment or decision from which the appeal is taken file an appeal in the manner prescribed by Sec. 4012; *but if within the appeal period* any motion is filed which, if granted, would render the judgment or decision ineffective, as, for example, a motion to open the judgment or to set aside the verdict or for judgment notwithstanding the verdict, the period of time for filing an appeal shall commence from the issuance of notice of the decision upon the motion or the expiration of the time within which a remittitur is ordered filed. . . .

"The time for filing the appeal or for taking any of the steps necessary to prosecute or defend the appeal, as hereinafter provided, may be extended in accordance with the provisions of Sec. 4040." (Emphasis added.)

in which to file an appeal from the trial court's judgment of strict foreclosure. The defendant allowed the twenty day appeal period to expire without filing an appeal. After the appeal period had expired, the defendant then filed a motion to open the judgment, but failed to secure a hearing date before the law date passed.

When a motion to open a judgment of strict foreclosure has not been filed within the time limited to appeal, no stay will come into effect. In this situation, or where the automatic stay pursuant to Practice Book § 4046[10] has been terminated, a law day may pass and if the defendant fails to redeem, the equity of redemption is extinguished and title to the property vests absolutely in the plaintiff, whether a hearing on a motion to open is pending. *Brooklyn Savings Bank* v. *Frimberger*, supra, 29 Conn. App. 631–32; *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 167, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989). In this case, the defendant did not file his motion to open until after the expiration of the time to appeal from the initial foreclosure judgment. Consequently, the defendant's motion to open, filed subsequent to the appeal period, did not produce a stay; nor did a stay result from the defendant's filing of a motion to enjoin the effect of the law day. Because the trial court did not hear either of these motions prior to the October 28, 1992 law day, title to the property vested absolutely in the plaintiff on October 29, 1992, pursuant to § 49-15.

---

[10] Practice Book § 4046 provides in pertinent part: "In all actions, except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and, if the case goes to judgment on appeal, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice so requires that a judge may at any time, upon motion and hearing, order that the stay be terminated. . . ."

The order of the trial court, setting a new law day after the prior law day had passed without being stayed, was void ab initio and subject to both direct and collateral attack. *Broaca* v. *Broaca*, 181 Conn. 463, 467, 435 A.2d 1016 (1980); *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 260, 259 A.2d 598 (1969). "It is an acknowledged principle of . . . every court in the world, that not only the decisions, but every thing done under the judicial process of courts, not having jurisdiction, are, ipso facto, void." (Internal quotation marks omitted.) *Broaca* v. *Broaca*, supra, 468.

We conclude that on October 29, 1992, the outstanding right of redemption by the defendant had been foreclosed and title became absolute in the plaintiff. Therefore, the trial court lacked jurisdiction to reset the law days.

We turn now to the defendant's contention that by mutual assent, the parties waived the provisions of § 49-15. An examination of this court's discussion of the issue of waiver in *Citicorp Mortgage, Inc.* v. *Tarro*, 37 Conn. App. 56, 654 A.2d 1238 (1995), serves to dispel the defendant's misguided understanding of the requirements of a waiver by the parties. In that case, this court reiterated the well established standards for waiver in Connecticut, stating, "waiver involves the intentional relinquishment of a known right. . . . *There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it.* . . . Moreover, a party claiming waiver has the burden of proving it." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 60.

In *Tarro*, this court held that the trial court had improperly concluded that the defendant's filing of subsequent pleadings constituted a waiver: "The defendant's filing of pleadings after the judgment of dismissal did not waive the four-month period of [General Stat-

utes] § 52-212a. Any subsequent pleadings by the defendant could not logically have constituted a waiver. Rather, those pleadings *were no more than a necessary attempt to defend his interests in this litigation.* The defendant had no choice but to file requisite pleadings and motions after the . . . opening of the judgment. At that time, the court's decision became the law of the case." (Emphasis added.) Id., 61.

In applying the legal principles of *Tarro* to the facts of this case, we conclude that the plaintiff did not waive the statutory provisions of § 49-15. Through its counsel, the plaintiff objected to the defendant's motion to open the judgment of strict foreclosure and the defendant's motion to enjoin the passing of the law day, and the trial court denied these motions. After denying the defendant's motions, the trial court then improperly reset the law day. The plaintiff's attorney's acquiescence to the trial court's action "hardly constitutes the intentional relinquishment or abandonment of a known right or privilege, which is the cornerstone of a claim of waiver. See *State* v. *Ramos*, 201 Conn. 598, 603, 519 A.2d 9 (1986), citing *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)." *Citicorp Mortgage, Inc.* v. *Tarro*, supra, 37 Conn. App. 61. This court is in accord with the plaintiff's contention that subsequent documents filed in court or recorded on the land records by the plaintiff did not constitute a waiver of any right, and were no more than a necessary attempt to defend the plaintiff's interests in the litigation because on July 9, 1993, the revised, but incorrect, law date was a part of the law of the case. It would be unfair to penalize the plaintiff for conforming its behavior to the court's order. Under all of the circumstances, including the defendant's motion to open the judgment and motion to enjoin, as well as the plaintiff's submission to the trial court's ruling, we conclude that the plaintiff did not waive the provisions of § 49-15.

## II

The defendant next claims that the trial court improperly denied his motion to dismiss the plaintiff's motion for a deficiency judgment as untimely. The defendant argues that the operative law day was reset to December 9, 1992, and therefore, pursuant to § 49-14,[11] the plaintiff had thirty days, commencing on December 10, 1992, and expiring on January 8, 1993, to file a motion for deficiency judgment. Since the defendant did not file his second motion for deficiency judgment until January 14, 1993, the defendant maintains that the plaintiff did not file a motion for a deficiency judgment within the period specified by § 49-14, and, hence, the trial court should have granted his motion to dismiss the plaintiff's motion for deficiency judgment.

As we have fully discussed in part I of this opinion, the trial court rendered a judgment of strict foreclosure on October 5, 1992, and set a law date of October 28, 1992. On October 29, 1992, due to the defendant's failure to redeem his interest in the subject property, coupled with his inability to stay the running of the law day, the plaintiff became the unconditional owner of the equity in the subject property. We conclude that the plaintiff's October 30, 1992 motion for deficiency judgment, dated November 2, 1992, was proper and timely filed pursuant to § 49-14 (a).

## III

Finally, the defendant claims that the trial court improperly admitted the testimony of the plaintiff's appraiser. Resolution of this issue requires recitation of the following additional facts.

---

[11] General Statutes § 49-14 (a) provides in pertinent part: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. . . ."

At the May 10, 1994 hearing on the plaintiff's October 30, 1992 motion for deficiency judgment, the plaintiff offered the testimony of Charles Burr, a licensed, certified real estate appraiser, to establish the value of the subject property. Burr testified that he had been requested by the plaintiff to appraise the value of the subject property as of October 10, 1991, and, in conjunction with said appraisal, Burr prepared a full written report as of that date. Burr further testified that he had updated the October 10, 1991 report on or about September 26, 1992 in accordance with the plaintiff's request. Burr valued the property on October 29, 1992, at $160,000.

The defendant objected to the admission of Burr's testimony on the bases of alleged noncompliance with Connecticut regulations with respect to real estate appraisals and certain alleged inconsistencies in Burr's appraisal report. The trial court overruled the defendant's objection.

To refute Burr's testimony and to establish a higher value, the defendant offered the testimony of three witnesses. William Pinto, coordinator with the state department of children and families, testified as to a proposal pending in December, 1992, between the department and the defendant to show the property's then market rental value.

The defendant's second witness was Richard H. Barry, a general appraiser of residential commercial property, licensed and certified by the state. Barry testified that he had been hired by the defendant to appraise the property as of December 10, 1992. Barry stated that as on December 10, 1992, he valued the property at $230,000.

The defendant himself took the stand as the third witness and testified concerning his efforts to rent the property during the period of July through December,

1992. The defendant further testified as to the actual rent derived from the property based upon his ownership of the property and his experience in managing the property.

The defendant alleges that the testimony of Burr was improper for the following reasons: (1) Burr did not make a separate and distinct certification on his September 26, 1992 addendum report as required by § 20-328-29 (a) (11) of the Regulations of Connecticut State Agencies; (2) Burr applied the use of a gross rent multiplier in his September, 1992 report, but did not use a gross rent multiplier in his October, 1991 report; (3) Burr was unable to recall and articulate various stages and processes undertaken in the appraisal in contravention of § 20-328-30 of the Regulations of Connecticut State Agencies; (4) Burr violated § 20-328-31 of the Regulations of Connecticut State Agencies in that he calculated the value of the property using the income approach but was not able to explain the adjustments made to the square footage of the comparables used in his September, 1992 report;[12] and (5) Burr could not testify as to the value of the property on the date of the vesting of title, October 29, 1992, and was qualified to testify only as to the value of the property on September 26, 1992, the date of his most recent report. For all of these reasons, the defendant maintains that the trial court should have excluded Burr's testimony.

In *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 451–52, 582 A.2d 182 (1990), our Supreme Court held that in a deficiency judgment proceeding, "[t]he determination of [a property's] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in light of all the circumstances in evidence bearing upon value and its own general knowl-

[12] Sections 20-328-27 through 20-328-33 of the Regulations of Connecticut State Agencies were repealed, May 18, 1994.

edge of the elements going to establish it. *Appeal of Cohen,* 117 Conn. 75, 85, 166 Atl. 747 [1933]. *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433 (1936). *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 183, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). [T]he determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is *privileged* to adopt whatever testimony he reasonably believes to be *credible. . . .* Id. When confronted with conflicting evidence as to valuation the trier may properly conclude that under all the circumstances a compromise figure most accurately reflects fair market value. *New Haven Savings Bank* v. *West Haven Sound Development,* [190 Conn. 60, 70, 459 A.2d 999 (1983)]; *Bennett* v. *New Haven Redevelopment Agency,* 148 Conn. 513, 515–16, 172 A.2d 612 (1961); see also *Whitney Center, Inc.* v. *Hamden,* [4 Conn. App. 426, 429, 494 A.2d 624 (1985)]." (Emphasis in original; internal quotation marks omitted.)

In this case, the plaintiff's appraiser testified to a value of $160,000 while the defendant's appraiser, Barry, testified that the subject property had a value of $230,000. The trial court determined the value of the subject property to be $180,000, a figure not asserted by either of the parties. Thus, the valuation of the property by the trial court appears to be an independent determination.

"In determining valuation pursuant to § 49-14, the trier, as in other areas of the law, is 'not bound by the opinion of the expert witnesses . . . .' *Birgel* v. *Heintz,* 163 Conn. 23, 30, 301 A.2d 249 (1972). . . . 'The evaluation of testimony is the sole province of the trier of fact. We do not retry the case. The conclusion of the trial court must stand unless there was an error of law or a legal or logical inconsistency with the facts found.' . . . *Maresca* v. *Allen,* 181 Conn. 521, 523, 436 A.2d 14

(1980). We will disturb the trial court's determination of valuation, therefore, only when it appears on the record before us that the court 'misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was [its] duty to regard.' " *New Haven Savings Bank* v. *West Haven Sound Development*, supra, 190 Conn. 69–70.

After a thorough review of the trial court's memorandum of decision, as well as the evidence presented at trial, we conclude that the trial court did not improperly admit the testimony of Burr. The trial court was entitled to admit the evidence of Burr and to weigh that evidence along with all of the other evidence presented. Given that the trial court did not select the property valuation submitted by either party, it appears that the trial court accepted and rejected portions of each appraiser's testimony in an effort to reach a compromise between the conflicting evidence presented. The defendant did not present any evidence to indicate that the trial court relied solely on the testimony of Burr in calculating the value of the property. Under the circumstances of this case, the trial court's determination clearly appears to have been an effort to give due regard and appropriate weight to all of the evidence presented and, therefore, was reasonable.

In addition to the testimony of the appraisers, the trial court also had before it photographs of the property, photographs of the comparable properties and the testimony of the defendant stating that he had been able to rent only one out of four units in a four month period. The trial court could have considered all of this evidence in reaching its decision. Although it is true, as the defendant emphasizes, that a litigant "is presently entitled to raise on appeal the issue of whether the valuation was properly supported by sufficient evidence." *Eichman* v. *J & J Building Co.*, supra, 216 Conn. 454, we conclude that the plaintiff met its burden

of presenting sufficient evidence for the trial court to determine the value of the property on the date that title vested in the plaintiff. The trial court's admission of the testimony of Burr was proper.

The judgment is affirmed.

In this opinion the other judges concurred.