JAY MCLAUGHLIN *v.* STANLEY SMORON ET AL.
(AC 19651)

Foti, Schaller and Hennessy, Js.

Argued November 29, 2000—officially released March 20, 2001

*Leonard A. Fasano*, for the appellants (defendants).

*Kathryn Calibey*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendants, Stanley Smoron and Josephine Smoron,[1] appeal following the trial court's denial of their motion to open a default judgment. They claim that the court improperly found that (1) a final judgment had been rendered in favor of the plaintiff, Jay McLaughlin, (2) there was no reasonable cause to allow the judgment to be opened as to the defendant Stanley Smoron and (3) there was no reasonable cause to allow the judgment to be opened as to the defendant

---

[1] Stanley Smoron is deceased and his estate has been substituted for him as the codefendant in this appeal. For purposes of this opinion, Stanley Smoron will be referred to as a defendant.

Josephine Smoron. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. On October 23, 1991, the plaintiff was proceeding eastbound in his automobile on Spring Street in Southington when he collided with a cow that was standing in the middle of the road. The defendants owned the cow and also own a farm adjoining Spring Street. The cow had wandered off their farm and into the road. As a result of the collision, the plaintiff was seriously injured and the cow was killed.

The plaintiff brought a negligence action against the defendants seeking damages for the injuries he suffered from the collision with the cow. The defendants failed to appear, and the plaintiff moved for a default judgment, which the court granted. The plaintiff then proceeded to a hearing on the issue of damages and, on August 23, 1995, he was awarded $385,000. On March 29, 1996, the defendants filed a motion to open the August 23, 1995 judgment. That motion, however, was not heard. On April 19, 1996, Stanley Smoron died, and the defendants' counsel withdrew from the case shortly after he had filed the motion to open. More than two years later, on September 8, 1998, the defendants' present counsel reclaimed the March 29, 1996 motion to open the judgment, which the court denied. The defendants then moved for reconsideration, which the court also denied.

I

The defendants first claim that the court improperly found that a final judgment had been rendered in favor of the plaintiff in this matter. Specifically, the defendants claim that the plaintiff failed to notify them of the August 23, 1995 judgment pursuant to Practice Book § 17-22[2] and that notice is a condition precedent to the

[2] Practice Book § 17-22 provides: "A notice of every nonsuit for failure to enter an appearance or judgment after default for failure to enter an appearance, which notice includes the terms of the judgment, shall be mailed

judgment becoming final. The defendants argue that because the judgment is not final[3] and because a judgment can be opened only within four months after it has been rendered pursuant to General Statutes § 52-212,[4] the court lacks jurisdiction to entertain the motion to open. As a result, the defendants claim, because the plaintiff cannot cure the defect, as the time has long passed, he must reclaim the matter for a hearing in damages to obtain a final judgment.

The plaintiff argues, however, that the defendants received notice of the judgment from the clerk of the court after the hearing in damages. The plaintiff also claims that the defendants received proper notice by virtue of a letter that the plaintiff's counsel had sent to them for the purpose of collecting on the August 23, 1995 judgment. The court rejected both arguments. The court found that the evidence did not sufficiently support the plaintiff's claim that the defendants received notice of the August 23, 1995 judgment against them in the manner required by Practice Book § 17-22. The court thus concluded that the defendants' motion to open was timely. We agree.

within ten days of the entry of judgment by counsel of the prevailing party to the party against whom it is directed and a copy of such notice shall be sent to the clerk's office. Proof of service shall be in accordance with Section 10-14."

[3] Although the defendants claim that the judgment of the court is not final because the failure to give notice pursuant to Practice Book § 17-22 is a condition precedent to the judgment becoming final, they offer no case law or statutory law to support that argument, nor does our research reveal any.

[4] General Statutes § 52-212 (a) provides: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

Practice Book § 17-22 provides: "A notice of every nonsuit for failure to enter an appearance or judgment after default for failure to enter an appearance, which notice includes the terms of the judgment, shall be mailed within ten days of the entry of judgment *by counsel of the prevailing party to the party against whom it is directed* and a copy of such notice shall be sent to the clerk's office. Proof of service shall be in accordance with Section 10-14." (Emphasis added.) Further, this court held in a similar case that "[a]lthough [notice] was dated two and one-half years after the judgment was rendered against the defendants, this delay does not constitute a jurisdictional defect. At the most, where a defendant does not otherwise have notice of a default judgment, such a delay would merely extend the time in which the defendant could move to set aside the judgment." *DiSimone* v. *Vitello*, 6 Conn. App. 390, 393, 505 A.2d 745 (1986); see also *Fontaine* v. *Thomas*, 51 Conn. App. 77, 80 n.3, 720 A.2d 264 (1998).

In this case, the plaintiff's counsel did not send proper notice as required by Practice Book § 17-22. Practice Book § 17-22 clearly requires "counsel of the prevailing party" to send notice to "the party against whom [judgment] is directed" in a timely fashion. Here, only the clerk of the court gave notice. Further, the plaintiff did not introduce into evidence the letter that he had sent to the defendants that allegedly set forth the information required by the rules of practice. The court could not, therefore, consider it. Thus, even though the defendants reclaimed the motion to open more than two years after the original motion had been filed, the defendants' motion to open was timely because the plaintiff's counsel did not give proper notice to the defendants pursuant to Practice Book § 17-22.

The court, after ruling that the defendants timely filed their motion to open, determined whether the defendants had complied with the requirements of Practice

Book § 17-43 (a). Practice Book § 17-43 (a) provides in relevant part: "Any judgment rendered or decree passed upon a default . . . may be set aside . . . upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of rendition of such judgment . . . and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. . . ."

"Our review of a denial of a motion to open a default judgment rests on the requirements of General Statutes § 52-212. Practice Book § 377 [now § 17-43 (a)] is almost identical to the statutory language. To obtain relief from a judgment rendered after default a two pronged test must be satisfied. The aggrieved person must show reasonable cause, or that a good defense existed at the time of the judgment, and that the movant was prevented by mistake, accident or other reasonable cause from making the defense. . . . In granting or refusing an application to open a judgment, the trial court is required to exercise a sound judicial discretion and its decision will be set aside only for an abuse of such discretion." (Citations omitted, internal quotation marks omitted.) *Cholewinski* v. *Conway*, 14 Conn. App. 236, 240–41, 540 A.2d 391 (1988).

The defendants argue that they were unable to appear as a direct result of their mental incompetency. As such, they claim that reasonable cause exists for their conduct and that the court should have granted the motion to open the judgment.[5] To address the defendants' claim

---

[5] The defendants also claim that they submitted an affidavit from an expert in accident reconstruction that demonstrates that the plaintiff was speeding at the time of the accident. The defendants argue that their defense is that the plaintiff's speed contributed to the cause of the accident. The defendants claim that because the court did not discuss this "good defense," it implicitly ruled in their favor on that part of the test under Practice Book § 17-43 (a). We do not find that argument persuasive. The court made no finding on

properly, we must individually examine each of the defendants' arguments.

## II

The defendant Stanley Smoron claims that the court improperly found that there was no reasonable cause to allow the judgment to be opened as to him. Specifically, he claims that he was incompetent at the time that the court entered the default judgment against him,[6] and that his incompetency satisfies the "other reasonable cause" requirement of Practice Book § 17-43 (a) and explains his failure to appear. He argues that Harry E. Morgan, a geriatric psychiatrist, evaluated him at the request of the commissioner of human resources as part of an application by the state for an involuntary conservatorship. Stanley Smoron emphasizes that one of Morgan's conclusions was that he was "incapable of engaging in appropriate planned legal representation in a consistent manner that can protect him." That conclusion provides the basis for Stanley Smoron's argument. We are not persuaded.

The plaintiff contends that the Probate Court never acted on or adopted the psychiatrist's evaluation, even though it was part of the probate file. He further contends that the date of the report, September 14, 1992, was too far removed in time from the period that Stanley Smoron was claiming that mental incompetency prevented him from appearing to defend himself against the plaintiff's action. He also argues that neither the state nor the Probate Court proceeded with a hearing for an involuntary conservatorship, but rather the Probate Court granted his petition for a voluntary conserva-

---

that claim. We are not persuaded that silence, as displayed here, is equal to an affirmation of the proffered defense.

[6] The court, on April 13, 1995, sent to the defendants notice of a default for failure to appear. After a hearing in damages was held, the court sent notice of the judgment of default for failure to appear to the defendants on September 11, 1995.

torship[7] and, approximately one year later, on October 29, 1993, granted his request to terminate the conservatorship.

The court found that Stanley Smoron received notice from the court on April 15, 1995, of the default against him for his failure to appear and that he took no action to appear and to defend against the judgment that was entered on August 23, 1995. The court also found that he was under no conservatorship for almost two years before the judgment was entered and, consequently, the court could not find any reasonable cause for his failure to appear and to defend the action. We agree with the trial court.

In a criminal proceeding, the law presumes that a defendant is competent and places the burden to show otherwise on the party alleging incompetence. See General Statutes § 54-56d. The courts have followed this presumption of competence in the civil arena. *Kirwan* v. *State*, 168 Conn. 498, 503, 363 A.2d 56 (1975) (in action to recover damages for false imprisonment and negligent medical care, court presumed plaintiff competent and capable of pursuing his case in courts, and allegation of insanity not enough); *Twichell* v. *Guite*, 53 Conn. App. 42, 48, 51, 728 A.2d 1121 (1999) (in strict foreclosure action, court concluded that defendant presumed competent and capable of defending case brought against her and that allegation of mental incompetency not enough).

Stanley Smoron has not produced any evidence that would convince a court that he was mentally incompetent to the extent that he could not appear in the case brought against him. It is also significant that he did not provide any reference to a more current psychiatric report other than the evaluation by his geriatric psychia-

---

[7] The Probate Court granted Stanley Smoron's request for a voluntary conservatorship of his estate, not his person.

trist that was dated September 14, 1992. There also was evidence presented that his voluntary conservatorship had ended long before he was required to file his appearance in the present action. We conclude, therefore, that the court did not abuse its discretion in denying the motion to open the judgment as to the defendant Stanley Smoron.

## III

The defendant Josephine Smoron also claims that the court improperly found that there was no reasonable cause to allow the judgment to be opened as to her. Specifically, she argues that she was legally incompetent because she was under the total domination and control of her brother, Stanley, the codefendant in this matter. As a result, because of his objection, she did not appear in this action to defend herself. We, again, are not persuaded.

Although Josephine Smoron's counsel put forth this argument, there was no testimony placed before the court to corroborate these claims.[8] The court concluded: "Based upon the evidence in the record, and which was presented at the hearing . . . [t]he court finds that at all times relevant to whether Josephine Smoron had 'reasonable cause' to not appear and defend in this action, she was legally competent."[9] The court further concluded that on the basis of the record

---

[8] Josephine Smoron's attorney argued that he had witnesses available to testify to the deplorable conditions under which the Smorons were living and to show that Stanley Smoron was a domineering and sometimes violent man who controlled Josephine. The court stated: "Okay, I don't feel it necessary at this point to have witness testimony." Josephine Smoron's attorney did not object, nor did he make any request to call his witnesses at that time or at any other time after that.

[9] The record reflects the fact that Josephine Smoron engaged legal counsel to represent her interests in legal proceedings, she served as conservatrix during the year of her brother's voluntary conservatorship, and she was appointed and served as executrix of her brother's estate.

before it, there existed "no reasonable cause to open the judgment as to Josephine Smoron." We agree.

Other than the statements of her attorney, which do not constitute evidence to be used by the court, there were no facts placed in evidence to support Josephine Smoron's position. We cannot, therefore, conclude that the court abused its discretion in denying the motion to open the judgment as to the defendant Josephine Smoron.

The judgment is affirmed.

In this opinion the other judges concurred.

